624 A.2d 225

**Darryl TAYLOR, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 15, 1993.

Decided March 31, 1993.

Kent D. Watkins, for petitioner.

Arthur R. Thomas, Asst. Chief Counsel, for respondent.

Before CRAIG, President Judge, McGINLEY, J., and WRIGHT, Senior Judge.

McGINLEY, Judge.

Darryl Taylor (Taylor) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) that denied his request for administrative relief from an order recommitting him as a convicted parole violator. The scope of this court's review of an order of the Board is to determine whether there was a constitutional violation or an error of law and whether necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Davis v. Pennsylvania*

*Board of Probation and Parole,* 134 Pa.Commonwealth Ct. 643, 579 A.2d 1372 (1990).

On February 17, 1991, while he was on reparole, Taylor was arrested in Philadelphia on charges of aggravated assault, simple assault, resisting arrest and recklessly endangering another person. The Board filed a parole violator's warrant on February 20, 1991, Certified Record (C.R.) 36; it cited Taylor for the new criminal charges and also for violation of technical parole conditions Nos. 2 (staying in approved residence unless permission granted to change), 3A (regular reporting to parole staff) and 3B (notifying parole staff within seventy-two hours of any arrest) in a Notice of Charges and Hearing of the same date. C.R. 38. On April 15, 1991, a Philadelphia Municipal Court judge found Taylor guilty of simple assault and imposed a suspended sentence. C.R. 69.[1] A handwritten notation dated April 30, 1991, on the Notice of Appeal states, "The deft's signature is waived due to his incarceration at SCI Graterford." *Id.*[2]

A Board Convicted Violator Report dated June 26, 1991, and signed by Agent Chantal–Lise Mirman and Supervisor Robert Joachim, reflects the conviction of April 15, 1991, and also states, "Agent has been unable to obtain a written verification of the disposition of case; However, City Hall Criminal Listings personnel verified 5/24/91 the information by phone," with a handwritten notation, "Agent checked court computer 7/11/91 & found mc conviction had been appealed & relisted." C.R. 63–B. On January 31, 1992, the Board date-stamped receipt of the Notice of Appeal from the April 15 conviction, some nine and one-half months after the conviction occurred. C.R. 69. The Board held a parole revocation hearing based on

1. The Revocation Hearing Report, Section 25 of the C.R., includes the Notice of Appeal from the conviction of April 15, 1991, C.R. 69, and also a handwritten notation at the end of the section headed "STATES EVIDENCE" stating that a certified copy of a court document was submitted into evidence. C.R. 66.

2. The Board held a hearing on the technical violation charges on April 23, 1991, at the Philadelphia County Prison. C.R. 56. As a result of that hearing the Board ordered Taylor recommitted for six months as a technical parole violator for violation of Condition No. 2 and Condition No. 3A on June 18, 1991. C.R. 63.

the new criminal conviction on February 27, 1992, more than ten months after the conviction, but within 120 days of the date-stamp of the Notice of Appeal. On June 1, 1992, the Board mailed a decision to Taylor that revoked his parole and recommitted him to serve fifteen months' backtime, with a recalculated maximum term expiration date of May 11, 1994 (later amended to May 3, 1994). Taylor petitioned for administrative relief, which the Board denied in a letter dated July 28, 1992. This petition for review followed.

Taylor argues two issues: (1) whether his revocation hearing was timely under 37 Pa.Code § 71.4(1), where the record shows actual knowledge by the Board agent of his conviction as early as May 24, 1991, and also demonstrates that he was returned to a state correctional facility on the same day he was convicted, and (2) whether his period of incarceration between the time the Board lodged its warrant against him three days after his arrest and the time of sentencing on the new conviction should be credited toward the backtime imposed, where he received a suspended sentence on the new conviction.

■ The regulation of the Board relating to conviction for a new criminal offense, 37 Pa.Code § 71.4, provides in part:

The following procedures shall be followed before a parolee is recommitted as a convicted violator:

(1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:

(i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with Commonwealth ex rel. Rambeau v. Rundle, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

(ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the Rambeau decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

The definition of "official verification" provided in 37 Pa.Code § 61.1 is, "Actual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." Where a parolee asserts that the Board held a revocation hearing beyond the 120–day period, the Board bears the burden of proving, by a preponderance of the evidence, that the hearing was timely. *Saunders v. Pennsylvania Board of Probation and Parole*, 130 Pa.Commonwealth Ct. 612, 568 A.2d 1370 (1990).

The Board's denial of administrative relief cites § 71.4 and quotes the definition of official verification from § 61.1. It notes that written verification of the conviction was date-stamped as received January 31, 1992, and concludes that the hearing within 120 days of that was timely.

Taylor notes that no "sentence status sheet" is included in the present record. He asserts that a more comprehensive record would indicate the actual date of his return from the county to the state institution. He attributes this absence to the failure of the Board to provide that record. However, he notes that the handwritten notation of April 30, 1991, on the Notice of Appeal indicates that he was already incarcerated in the State Correctional Institution at Graterford at that time. Taylor contends that the 120–day period for holding his revocation hearing should have been triggered by his return to state custody under § 71.4(1)(i) and that the sentencing status report would provide "official verification" of his return. He also argues that the Board had actual notification of his conviction long before the time of official verification.

The Board does not respond to Taylor's claim that the period was triggered by official verification of the time of his return to state custody. Rather, the Board cites cases holding

that the 120–day period in § 71.4(1) is triggered by official verification of conviction as defined in § 61.1, *Choi v. Pennsylvania Board of Probation and Parole*, 136 Pa.Commonwealth Ct. 728, 584 A.2d 1092 (1990), and that personal knowledge of a parole agent is not relevant to a determination of when such official verification of conviction occurred. *Tarrant v. Pennsylvania Board of Probation and Parole*, 104 Pa.Commonwealth Ct. 369, 521 A.2d 997 (1987).

In our view, Taylor is correct. Section 71.4(1) provides the general rule that the revocation hearing must be provided within 120 days of the receipt of "official verification" *of the conviction.* That rule is limited, however, by the exception set forth in subparagraph (i). The exception provides that where the parolee is confined outside the jurisdiction of the Department of Corrections (Department), such as confinement in a county institution, the hearing shall be held within 120 days of "official verification *of the return of the parolee to a State correctional facility.*" (Emphasis added.) Official verification of return is a different matter than official verification of conviction. The regulation is designed, at least in part, to provide latitude to the Board. For example, where the Board receives official verification of conviction in another state but there is some delay in the actual return of the parolee to Pennsylvania, the 120–day period runs from the subsequent verification of the return. We have acknowledged that § 71.-4(1)(i) "is based on the well-established principle that the 120–day period does not begin to run until the Board acquires jurisdiction over the parolee." *Williams v. Pennsylvania Board of Probation and Parole*, 134 Pa.Commonwealth Ct. 597, 601, 579 A.2d 1369, 1371 (1990).[3]

■ However, the plain language of subparagraph (i) also conforms to Taylor's position. When a convicted parolee is confined outside the jurisdiction of the Department and then is returned to it, the official verification *of return* triggers the

**3.** For a discussion of the duty of the Board to exercise good faith in connection with receipt of official verification of conviction, see *Fitzhugh v. Pennsylvania Board of Probation and Parole*, 154 Pa.Commonwealth Ct. 123, 623 A.2d 376 (1993).

120–day period, even if official verification *of conviction* has not yet been received. This provision places a reasonable burden on the Board to begin the process of scheduling a revocation hearing when state authorities assume custody of a parolee, and to take affirmative steps to discover the basis for its jurisdiction if that basis is unclear. Subparagraph (ii) supports this interpretation by specifying that a waiver by a parolee in county custody of his right to a hearing before the full Board results in deemed jurisdiction of the Department. This provision is entirely superfluous if the 120–period is triggered only by official verification of conviction, regardless of the place of confinement.[4]

Citing *Williams,* Taylor also argues that this record demonstrates unreasonable, unjustifiable delay, not attributable to him or to his counsel. *Williams* also involved the 120–day period following official verification of the return of the parolee under § 71.4(1)(i), rather than the period following official verification of the conviction. There a Pennsylvania parolee had been convicted and incarcerated in Georgia. He was paroled from Georgia and transferred to the custody of Pennsylvania authorities in August of 1989, although he testified that he had earlier received a notice from the Georgia State Board of Pardons and Paroles that he was tentatively scheduled for parole in December of 1988, and he testified that he had waived extradition. He asserted that his Georgia parole was delayed because of the Pennsylvania detainer, and that the Pennsylvania authorities did not come for him until Au-

---

4. *Compare Murray v. Jacobs,* 99 Pa.Commonwealth Ct. 39, 512 A.2d 785 (1986), where a parolee pleaded guilty in common pleas court to a charge of retail theft and was sentenced and immediately paroled by the court because he had served the minimum sentence that was imposed during his incarceration after arrest. The parolee was then held by the county authorities solely on the detainer of the Board. This court held that under former 37 Pa.Code § 71.4(2)(i) (which was amended slightly and renumbered as § 71.4(1)(i) in the 1988 amendments to the Board's rules, 17 Pa.B. 3889, 3895 (1987) and 18 Pa.B. 250, 254–55 (1988)) the hearing had to be held within 120 days of official verification of the parolee's return to a state correctional institution. Because the record contained no evidence of such official verification of return, the court held that the 120 days ran from the date the parolee could have been returned and the Board could have had such official verification, rather than from a later date when he actually returned.

gust. The record contained no official verification from Georgia of the parolee's availability.

We concluded that the situation was analogous to one where a county institution releases the parolee from confinement on county charges but holds him or her at the Board's request. We held that where there is no official verification of return the 120–period runs from the time the Board could have obtained the official verification:

> Under such circumstances the 120–day time limitation is not tolled but begins to run from the date of release by county authorities.... Indeed, if the regulation were interpreted to permit the Board to toll the 120–day period by simply leaving Petitioner in Georgia, there could be a denial of due process. *Unreasonable and unjustifiable delays which are not attributable to the parolee or his counsel do not toll the running of the 120 days.*

*Williams,* 134 Pa.Commonwealth Ct. at 602, 579 A.2d at 1371–72 (citation omitted) (emphasis added). Because the record had offered no clear explanation for the delay between December and August, we remanded the matter to the Board for a determination of when Georgia made the parolee available to the Pennsylvania authorities and whether the Board acted with reasonable dispatch to return him.

The present case differs from *Williams* in one crucial respect. The Board's information sheet dated August 24, 1992, which includes the computation of the new maximum expiration date following the revocation hearing, specifically states: "Custody for Return: 4/15/91." C.R. 76. Here the date of commencement of the period is known, and the 120 days began to run on April 15, 1991, and ended August 11, 1991. The revocation hearing on February 27, 1992, was held 319 days after the date acknowledged by the Board as the date of return, and 199 days beyond the 120–day period.

The only explanation offered by the Board for this delay is contained in the Board's denial of administrative relief and in its brief to this court—the Board considered the 120–day period not to be triggered until the time of official verification *of the conviction.* As a matter of law, the clock was already

ticking. The Board offers no evidence or argument that might constitute adequate justification or excuse for the delay as calculated from the time of the correct triggering event—the return of Taylor to the Department's jurisdiction. Because the burden is on the Board in this case to show that the revocation hearing was timely, *Saunders,* and it has not done so, we must reverse. Where the Board fails to meet its burden of showing by a preponderance of the evidence that a revocation hearing was timely, the appropriate remedy is a dismissal of the parole violation charges with prejudice. *Johnson v. Pennsylvania Board of Probation and Parole,* 129 Pa.Commonwealth Ct. 652, 566 A.2d 918 (1989), *aff'd per curiam,* 525 Pa. 573, 583 A.2d 790 (1991).

In view of our disposition of the issue of the timeliness of the revocation hearing, the question of whether the Board properly calculated the backtime charged to Taylor is moot.

### ORDER

AND NOW, this 31st day of March, 1993, the letter-order of the Pennsylvania Board of Probation and Parole dated July 28, 1992, at Parole Number 6659–S, is reversed. This matter is remanded to the Board with instructions to dismiss the parole revocation charges against Darryl Taylor based on the conviction of April 15, 1991, and to recalculate the amount of backtime accordingly.

Jurisdiction is relinquished.