Michael BROOKS, Petitioner,

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 22, 1997.
Decided Dec. 16, 1997.

Lowell T. Williams, Asst. Public Defender, for petitioner.

Seth A. Mendelsohn, Asst. Counsel, for respondent.

Before COLINS, President Judge, and SMITH and FRIEDMAN, JJ.

FRIEDMAN,[1] Judge.

Michael Brooks (Brooks) petitions this court for review of a decision of the Pennsylvania Board of Probation and Parole (Board) denying his request for administrative relief after a Board order revoked his parole and recommitted him as a convicted parole violator. We vacate and remand this matter to the Board as further findings of fact are required.

Brooks, incarcerated on a one and one-half to seven year sentence for robbery, was paroled on November 13, 1990, with a maximum term expiration of May 13, 1996. On July 27, 1992, Brooks was recommitted as a convicted parole violator, based on his conviction for violating drug laws, simple assault, resisting arrest, recklessly endangering another person and criminal mischief, and was then sentenced for these crimes. Brooks was reparoled from the second sentence on March 16, 1993.

Following this release, and with the permission of the Board, Brooks resided in Whitehall, Ohio. On February 5, 1995, while in Ohio, Brooks was arrested on two counts of drug trafficking. He pleaded guilty and, on July 6, 1995, was sentenced to six months imprisonment, with one-hundred and fifty-two days credit. Accordingly, Brooks completed his Ohio sentence and was available to

---

1. This case was reassigned to the authoring Judge on November 19, 1997.

commence service of his Pennsylvania backtime on August 2, 1995.

Brooks was returned to Pennsylvania, and a parole revocation hearing was held on December 13, 1995. By decision dated May 28, 1996, the Board revoked Brooks' parole, based on his Ohio conviction, and recommitted him as a convicted parole violator to serve twenty-four months backtime. Brooks filed an administrative appeal, which the Board denied, (R.R. at 51), and Brooks now seeks review of that denial with this court.[2]

██ Brooks first argues that the Board failed to hold his revocation hearing within the one-hundred and twenty day period required by 37 Pa.Code § 71.4 (emphasis added), which provides:

> [B]efore a parolee is recommitted as a convicted violator:
>
> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification ... of the guilty verdict at the highest trial court level *except* as follows:
>
> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections ... the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

The requirement in 37 Pa.Code § 71.4(1)(i) is based on the well-settled principle that the one-hundred and twenty day period does not begin to run until the Board acquires jurisdiction over the parolee. *Williams v. Pennsylvania Board of Probation and Parole*, 134 Pa.Cmwlth. 597, 579 A.2d 1369, 1371 (1990), *appeal after remand*, 145 Pa.Cmwlth. 31, 602 A.2d 434 (1992), *appeal denied*, 533 Pa. 616, 618 A.2d 405 (1992). Thus, the general rule is that the one-hundred and twenty day period begins to run on the date that the parolee is actually returned to a state correctional facility. Here, however, Brooks contends that the one-hundred and twenty day period commenced not on the date of his return, but on August 2, 1995, the date of his *availabili-*ty to Pennsylvania, *one-hundred and thirty-three* days before the December 13, 1995 revocation hearing. Where a convicted parole violator alleges that his revocation hearing was held beyond the one-hundred and twenty day period, it is for the Board to prove by a preponderance of the evidence that it was, in fact, timely. *Abbruzzese v. Pennsylvania Board of Probation and Parole*, 105 Pa.Cmwlth. 415, 524 A.2d 1049 (1987). If the Board fails to sustain its burden, the appropriate remedy is a dismissal of the parole violation charges with prejudice. *Taylor v. Pennsylvania Board of Probation and Parole*, 154 Pa.Cmwlth. 462, 624 A.2d 225 (1993).

In *Fulton v. Pennsylvania Board of Probation and Parole*, 663 A.2d 865 (Pa.Cmwlth. 1995), *appeal denied*, 543 Pa. 732, 673 A.2d 337 (1996), this court dealt with a factually similar case. There, Arizona authorities informed the Board that a Pennsylvania parolee who had been incarcerated in Arizona would complete his Arizona sentence and be available to the Pennsylvania Department of Corrections on February 9, 1994. The parolee was not actually returned to a Pennsylvania state correctional facility until February 28, 1994, and the Board finally held the parole revocation hearing on June 14, 1994. The parolee claimed that the hearing was held beyond the permissible one-hundred and twenty day period, maintaining, like Brooks here, that the time period commenced upon his availability to Pennsylvania on February 9, 1994, rather than on February 28, 1994, the date he was returned to Pennsylvania. We disagreed.

██ In determining which date triggered the one-hundred and twenty day revocation hearing time period, we relied on *Williams* in which we stated that " '[u]nreasonable and unjustifiable delays which are not attributable to the parolee or his counsel do not toll the running of the 120 days....' " *Fulton*, 663 A.2d at 867 (quoting *Williams*, 579 A.2d at 1372). We thus recognized an exception

---

2. Our scope of review is limited to determining whether the necessary findings of fact and conclusions of law are supported by substantial evidence, whether the Board committed an error of law and whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S.A. § 704; *Williams v. Pennsylvania Board of Probation and Parole*, 654 A.2d 235 (Pa.Cmwlth.1995).

to the general rule that where there is an unreasonable and unexplained delay between the parolee's date of availability and his date of return to Pennsylvania, the one-hundred and twenty day period begins to run from the date of availability. However, in *Fulton* we concluded that the nineteen day span from the parolee's availability to his actual return to a Pennsylvania state correctional facility from Arizona was not unreasonable; therefore, we held that the revocation hearing time period commenced on February 28, 1994, making the June 14, 1994 revocation hearing, one-hundred and six days later, timely. *Id.*

In *Williams,* a Pennsylvania parolee was incarcerated in Georgia. Georgia notified Pennsylvania that the parolee's tentative release date was December 9, 1988; however, the parolee was not returned to Pennsylvania until August 25,. 1989, with his revocation hearing held on October 25, 1989. The parolee contended that his revocation hearing, occurring almost eleven months after his tentative release date, was impermissibly beyond the one-hundred and twenty day period. Because the record in *Williams* did not contain a clear explanation for the nine month delay in returning the parolee to Pennsylvania, we were unable to complete our appellate review, and we vacated and remanded the case to the Board to establish the date that the parolee was made available to Pennsylvania,[3] and whether the Board acted "with reasonable dispatch" to return him to Pennsylvania.

Here, the record is clear that Brooks was made available to Pennsylvania on August 2, 1995. However, the record is unclear, and provides a number of conflicting dates with respect to the date Brooks was transferred to Pennsylvania: the Recommitment Data Sheet indicates that Brooks was returned to Pennsylvania on September 6, 1995, (O.R. at 43); a memorandum written by a hearing examiner to the Hearing Review Board indi-

cates that Brooks was not returned to Pennsylvania until October 6, 1995, (O.R. at 23); and the Revocation Hearing transcript shows a transfer date of October 16, 1995. (O.R. at 32.) Thus, due to the lack of clarity of the record, we are unable to ascertain the date that Brooks actually was returned to Pennsylvania.

■ Even assuming that Brooks was returned to Pennsylvania on the earliest date, September 6, 1995, we believe that a resulting thirty-four day span between the date of Brooks' availability, August 2, 1995, and the date he was returned to Pennsylvania requires a determination that he was returned "with reasonable dispatch" to Pennsylvania.[4] Clearly then, a period of seventy-six days, if Brooks was returned to Pennsylvania on October 16, 1995, requires the Board to prove that it acted reasonably in securing Brooks' return. In light of these problems, as in *Williams,* we believe that appellate review is precluded here because we can neither ascertain from the record whether the Board met its burden of proving that Brooks' revocation hearing was timely held, nor conclude automatically that the Board acted reasonably in effecting Brooks' return to Pennsylvania. Therefore, consistent with *Williams,* we are compelled to vacate and remand this matter for further findings of fact.

■ Brooks next argues that, because the presumptive guideline range is three to six months backtime after a conviction for a misdemeanor drug offense, the Board's imposition of twenty-four months of backtime service, without appropriate justification, was impermissible.[5] 37 Pa.Code § 75.1 establishes the application of presumptive ranges to convicted parole violators, but maintains that "[t]he Board may deviate from the presumptive range ... provided written justification is given." 37 Pa.Code § 75.1(c); *Bradley v. Pennsylvania Board of Probation and Parole,* 138 Pa.Cmwlth. 108, 587 A.2d 839 (1991). Accordingly, the Board may, in

3. In *Williams,* the record indicated the date the parolee was returned to the Pennsylvania correctional facility, but it did not indicate the date of availability.

4. In *Fulton,* we held that a period of nineteen days was not unreasonable and did not require a

remand to determine if the parolee was returned to Pennsylvania "with reasonable dispatch."

5. We recognize that depending on the resolution of the first issue, this argument may be moot, but we will address it in the interests of judicial economy.

its discretion on a case-by-case basis, exceed the maximum presumptive range in awarding backtime for parole violations, provided written justification is given and the aggravating circumstances relied upon are supported by substantial evidence in the record. *Bandy v. Pennsylvania Board of Probation and Parole*, 108 Pa.Cmwlth. 387, 530 A.2d 507 (1987), *appeal denied*, 518 Pa. 614, 540 A.2d 535 (1988).

 Here, the Board relied on an Interstate Report from Ohio as presenting aggravating circumstances to support an increased award of backtime. However, Brooks contends that this report from Ohio was hearsay and, thus, improperly considered. We disagree. In *Falasco v. Pennsylvania Board of Probation and Parole*, 104 Pa.Cmwlth. 321, 521 A.2d 991 (1987), we held that the Board may properly utilize and take official notice of information relevant to determine a penalty once the fact of a parole violation has been proven. *Id.* at 994. Accordingly, the Board's consideration of the Ohio Interstate Report was proper during the penalty phase of this proceeding, and it provides substantial record evidence of aggravating factors for the discretionary imposition of the twenty-four month sentence.[6]

Based on the reasoning set forth in this opinion, we vacate the determination of the Board and remand this matter to the Board to establish the date of Brooks' return to Pennsylvania, and to provide evidence proving that it acted with reasonable dispatch in returning Brooks to Pennsylvania.

### ORDER

AND NOW, this 16th day of December, 1997, we hereby vacate the determination of the Pennsylvania Board of Probation and Parole, dated January 2, 1997, and we remand this matter for further findings consistent with our opinion.

Jurisdiction relinquished.

---

6. The Interstate Report clearly establishes that Brooks was in constructive possession of drugs, weapons, ammunition and a large sum of cash at the time of his arrest. Coupled with the fact that

Brooks was already on parole for serious assaultive offenses, there is certainly substantial evidence in the record to support the discretion of the Board to exceed the presumptive range.