Richard JORDAN, Petitioner,

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 31, 1997.
Decided Dec. 23, 1997.

Edward C. Greco, Sunbury, for petitioner.

Robert A. Greevy, Harrisburg, for respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

Richard Jordan (Jordan) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board), dated March 13, 1997, denying Jordan's request for administrative relief and recommitting him to serve fifteen months backtime as a convicted parole violator.

On December 3, 1993, Jordan, while on parole, was arrested and charged with manufacturing and possession of controlled substance, possession of drug paraphernalia and criminal conspiracy. On May 6, 1994, Jordan was convicted and then sentenced to serve two and one-half to five years on May 24, 1994.[1] Disposition Report, May 15, 1995; Certified Record (C.R.) at 22.

---

**1.** The Court of Common Pleas of Snyder County granted Jordan's request for bail pending his appeal to the Pennsylvania Superior Court. The Superior Court affirmed and Jordan was ordered

On May 5, 1995, Jordan was transferred to the State Correctional Institute (SCI)-Camp Hill and on May 15, 1995, the Board lodged a detainer. On July 9, 1995, Jordan was transferred to SCI–Coal Township and the Board scheduled an August 17, 1995, revocation hearing. Because of a riot lockdown on August 14, 1995, at SCI–Coal Township, on August 17 the Board had to continue the revocation hearing because of the riot. On September 14, 1995, the riot lockdown ended and the Board rescheduled the revocation hearing for October 19, 1995. Jordan's attorney requested a continuance on October 17 and the Board finally conducted the revocation hearing on November 9, 1995. The Board recommitted Jordan as a convicted parole violator. On March 13, 1997, the Board denied Jordan's administrative appeal.

 On appeal Jordan contends that his revocation hearing was untimely pursuant to 37 Pa.Code § 74.4(1). Our scope of review of a recommitment decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed and whether any constitutional rights of the parolee have been violated. *Larkin v. Pennsylvania Board of Probation and Parole*, 124 Pa.Cmwlth. 184, 555 A.2d 954 (1989). Where a parolee asserts that the Board held a revocation hearing beyond the 120–day period, the Board bears the burden of proving, by a preponderance of the evidence, that the hearing was timely. *Taylor v. Pennsylvania Board of Probation and Parole*, 154 Pa. Cmwlth. 462, 624 A.2d 225, 227 (1993).

 Jordan proposes that the 120–day time period ran from May 9, 1995, the date Jordan was returned to a state correctional institution, until August 17, 1995, the date the revocation hearing was originally scheduled but continued due to the prison riot, a total of 100 days. Alternatively, Jordan proposes that the 120–day time period commenced on May 15, 1995, the date the Board lodged its detainer, until August 17, 1995, a

total of ninety-four days. Jordan concedes that the time period from August 17, 1995, until September 14, 1995, is excluded because of the lockdown status at SCI–Coal Township, but Jordan asserts that the clock recommenced running on September 14, 1995, when the lockdown was lifted and ran until October 17, 1995, the date Jordan's attorney requested a continuance of the October 19, 1995, hearing, a total of thirty-three days. If we accept either of Jordan's proposals, either 127 days or 133 days elapsed before the scheduled October 19, 1995, revocation hearing, and the time for hearing had run.

37 Pa.Code § 37.4(1) provides that "before a parolee is recommitted as a convicted violator ... a revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court...." 37 Pa.Code § 71.5 provides:

> (c) In determining the period for conducting hearings under this chapter, there shall be excluded from the period, a delay in any stage of the *proceedings which is directly* or indirectly attributable to one of the following:
>
> ....
>
> (5) An event which could not be reasonably anticipated or controlled by the Board, including, but not limited to, ... prison and civil disorder. (emphasis added).

The record reveals that the Board initially scheduled the revocation hearing on August 17, 1995, well within the 120–day time period. Because of the lockdown at SCI–Coal Township on August 14, 1995, a continuance of the revocation hearing was granted "to next available listing." Request for Continuation Hearing, August 17, 1995, at 1; C.R. at 24. On September 14, 1995, the lockdown was lifted at SCI–Coal Township. On October 11, 1995, the Board notified Jordan that his revocation hearing was rescheduled to October 19, 1995.[2] Pennsylvania Board of

---

to surrender to authorities on May 5, 1995, to begin serving his sentence.

**2.** On October 17, 1995, Jordan's counsel requested a continuance. 37 Pa.Code § 71.5(c)(3) provides that a "continuance granted at the request of a parolee or counsel" shall be excluded from the 120–day time period.

Probation and Parole Notice of Charges and Hearing at 1; C.R. at 25. Based upon the following, the period from either May 5, 1995, or May 15, 1995, until the August 14, 1995, lockdown applies against the 120–day time period. Therefore, either ninety-one or ninety-seven days elapsed prior to the lockdown. The period from September 14, 1995, until October 19, 1996, a total of thirty-five days, was "directly" the result of the lockdown following the riot and the aftermath of the lockdown.[3] As a result, the November 9, 1995, hearing was timely.[4]

Accordingly, we affirm the Board's denial of administrative relief.

### ORDER

AND NOW, this 23rd day of December, 1997, the order of the Pennsylvania Board of Probation and Parole at No. 7263–V, dated March 13, 1997, is affirmed.

**3.** We note that 37 Pa.Code § 71.1 also excludes any delay that is indirectly attributable to prison unrest. Black's Law Dictionary defines the term "indirect" as "growing out of [an act or cause]." Black's Law Dictionary (6th Ed.) at 773.

**4.** Also, if Jordan's interpretation of 37 Pa.Code § 71.5(c)(5) were accepted, the following hypothetical situation could occur; suppose a revocation hearing was scheduled for the 119th day and a lockdown occurred as a result of the riot, the Board would have one day to conduct the hearing after the lockdown was lifted. This position fails to fully take into account the Code provision which excludes from the period for conducting hearings not only "directly" attributable delays but delays "indirectly" attributable to prison disorder as well.