IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Foggie,      :
    Petitioner   :
          :
 v.        : No. 608 C.D. 2021
          : Submitted: March 4, 2022
Pennsylvania Parole Board,  :
    Respondent :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER        FILED: April 29, 2022

Petitioner Jonathan Foggie (Foggie) petitions for review of Respondent Pennsylvania Parole Board's (Board) April 29, 2021 order, by which the Board affirmed its December 12, 2019 decision and reversed in part its May 22, 2020 decision. Through those decisions, in aggregate, the Board deemed timely Foggie's November 25, 2019 parole revocation hearing, declared Foggie a convicted parole violator (CPV), imposed a total of 60 months of backtime upon him, declined to award him street time credit, and recalculated the maximum date on his underlying sentence. Upon review, we reverse the Board's April 29, 2021 order in part, vacate it in part, and remand this matter to the Board for additional proceedings.

## I. Background

The relevant facts are as follows. Foggie pled guilty to having committed multiple robbery-related crimes in Philadelphia, Pennsylvania. As a result, the Court of Common Pleas of Philadelphia County sentenced him on August 5, 2013 to an aggregate carceral term of 5 to 15 years in state prison. Certified Record (C.R.) at 1-

3. The Board paroled Foggie on September 11, 2017, at which point the maximum date on his August 2013 sentence was August 20, 2027. *Id.* at 5-11. Foggie then failed to report to his parole officer on January 23, 2018, which prompted the Board to declare him delinquent as of that date and to issue a detainer warrant on January 30, 2018. *Id.* at 14, 18, 31.

On March 31, 2018, Foggie was arrested on multiple federal robbery and firearms-related offenses. *Id.* at 27, 29, 33, 44-45, 64-65. Two days later, on April 2, 2018, Board agents arrested Foggie on the Board's warrant. *Id.* at 17-18. Foggie was subsequently transferred to State Correctional Institution (SCI) - Graterford on April 4, 2018, where he was held in the Board's custody pending resolution of the aforementioned parole violation charge. *Id.* at 31; Supplemental Certified Record (S.C.R.) at 1a (Pennsylvania Department of Corrections moves report); *see* C.R. at 15 (Board's detainer warrant, dated April 4, 2018).[1] On April 12, 2018, Foggie waived his right to a parole violation hearing, as well as to counsel at such a hearing, and admitted to committing the technical violation, *i.e.*, delinquency, with which he had been charged. C.R. at 19-20. That same day, the Board transferred Foggie to federal authorities via writ. S.C.R. at 1a.[2] Thereafter, on July 24, 2018, Foggie was

---

[1] Based upon the record before us, it is not entirely clear how the events immediately surrounding Foggie's March 31, 2018 and April 2, 2018 arrests transpired. The first arrest, which pertained to the aforementioned federal offenses, was done under the joint authority of the Board, the Federal Bureau of Investigation, and the United States Marshals Service, while the second arrest was done solely pursuant to the Board's warrant stemming from Foggie's violation of his parole terms. *See* C.R. at 29, 31. The record does not shed light, however, on where exactly either of these arrests occurred or what happened to Foggie between the first arrest on March 31, 2018, and his subsequent transfer to SCI-Graterford on April 4, 2018.

[2] Generally speaking, a writ is "[a] court's written order, in the name of a state or other competent legal authority, commanding the addressee to do or refrain from doing some specified act." *Writ*, BLACK'S LAW DICTIONARY (11th ed. 2019) (*available at*
**(Footnote continued on next page…)**

charged in the Court of Common Pleas of Delaware County with committing several crimes in connection with a robbery that had occurred in Upper Darby, Pennsylvania, on December 9, 2017. C.R. at 98, 145-47.

On August 21, 2018, Foggie pled guilty before the United States District Court for the Eastern District of Pennsylvania (District Court) to two counts of robbery and three firearms-related offenses. *Id.* at 27, 44-45, 156. The District Court then sentenced Foggie to a total of 425 months in federal prison on April 19, 2019, along with 5 years of supervised release and the payment of monetary penalties. *Id.* at 44-50, 157. Federal authorities then transferred Foggie to SCI-Phoenix on April 30, 2019. S.C.R. at 1a.

On June 24, 2019, the Court of Common Pleas of Delaware County set Foggie's bail regarding the July 2018 charges at $250,000. C.R. at 146. Foggie was unable to post this amount and, on July 16, 2019, the Board transferred him via writ to Delaware County authorities, pending resolution of those charges.[3] *Id.* at 146; S.C.R. at 1a. On October 8, 2019, Foggie pled guilty in the Court of Common Pleas of Delaware County to one count each of robbery, simple assault, and criminal conspiracy. C.R. at 100, 147-48. He was then sentenced on November 4, 2019, to an aggregate carceral term of 10 to 20 years, to be served concurrently with his federal sentence. *Id.* at 100.

---

https://1.next.westlaw.com/Document/I0486186f808511e4b391a0bc737b01f9/View/FullText.html).

[3] The record does not expressly list the reason for his return to state prison, but the sequence of events shows that the transfer was so that the Board could address Foggie's parole violations and he could face the Delaware County charges. As discussed below, he was only sent to federal prison on a writ, so he technically never left the Pennsylvania Department of Corrections' (DOC) jurisdiction even while he was being dealt with by federal authorities.

The Board received official verification of Foggie's federal conviction on August 27, 2019, while he was still in Delaware County's custody, whereupon it scheduled a parole revocation hearing for September 30, 2019. C.R. at 37, 52. This hearing was rescheduled several times before it finally took place before a hearing examiner on November 25, 2019.[4] Of relevance to the appeal currently before us, Foggie objected to the proceeding on the basis that it had not been held in a timely fashion and, instead, was taking place beyond the legally mandated 120-day time window after his federal conviction. C.R. at 65, 77.[5] In response, the Board presented testimony from Calvin Healey, a Board supervisor. Mr. Healey stated that the Board agent who had been assigned to the matter knew about Foggie's August 2018 federal conviction and had unsuccessfully attempted to obtain documents through the Pennsylvania Criminal Intelligence Center (PaCIC)[6] that formally

---

[4] This hearing was postponed once because parole supervision staff was not able to attend and twice because Foggie was still held by Delaware County authorities and had not been returned to the Board's custody. *See* C.R. at 52-54, 57.

[5] Per the Board's administrative regulations, and as discussed at length *infra*, the Board must hold a parole revocation hearing in most instances within 120 days of receiving official verification of a parolee's new criminal conviction. This requirement is modified slightly when the parolee has been confined outside the DOC's jurisdiction, as well as when a parolee is confined in a county facility and has waived their right to have a parole revocation hearing before a Board panel. *See* 37 Pa. Code § 71.4(1)-(1)(ii).

[6] According to the Pennsylvania State Police,

> [its] Bureau of Criminal Investigation[] established the . . . PaCIC [in] July of 2003 in an effort to provide law enforcement agencies throughout the Commonwealth with one central point of contact for their information needs. Through the PaCIC, trained analysts provide state police members and federal, state, and municipal law enforcement officers with access to intelligence information, investigative data, and public source information 24 hours a day, [7] days per week. Analysts also provide investigative support by

**(Footnote continued on next page…)**

4

confirmed this conviction. *Id.* at 66-67, 73. Mr. Healey only talked about this effort in general terms, and said nothing about how often the assigned agent checked this database, but made clear that the Board did not actually receive such official verification until August 27, 2019, when another Board agent directly asked a federal prosecutor to send over the information. *See id.* at 66-67. According to Mr. Healey, documentation of this nature is not available until an individual has been sentenced in federal court and, in his opinion, any delay in securing official proof of Foggie's federal conviction was not due to the Board's lack of diligence. *Id.* at 66-67, 80-81. Mr. Healey, however, repeatedly misidentified the date of Foggie's return to the state prison system as May 30, 2019. Additionally, Mr. Healey mistakenly said that the prison to which Foggie had been sent after his return was SCI-Albion, and admitted he did not know that Foggie had actually been returned to SCI-Phoenix in April 2019. *Id.* at 66, 69, 73. Despite this, the hearing examiner ultimately found Mr. Healey's testimony to be credible and dismissed Foggie's objection to the hearing's timeliness. *Id.* at 84, 89. The Board then issued its first parole revocation decision on December 12, 2019, through which it recommitted Foggie to serve 24 months of backtime as a CPV and recalculated the maximum date on his original August 2013 state-level sentence from Philadelphia County as November 13, 2029. *Id.* at 91-92.

---

analyzing complex information and collating it into intelligence summaries, organization charts, link analysis, time event analysis, and other manageable, professional products. The PaCIC is an attempt to provide law enforcement officers a central point of contact for information needed during traffic stops, investigative detentions, and other law enforcement encounters and investigations.

*Pennsylvania Criminal Intelligence Center*, PA. STATE POLICE, https://www.psp.pa.gov/Pages/Pennsylvania-Criminal-Intelligence-Center.aspx (last visited Apr. 28, 2022).

Foggie then administratively appealed this decision on January 8, 2020, on the basis of the aforementioned timeliness issue. *Id.* at 137-38.

On January 22, 2020, the Board held a second parole revocation hearing, in response to the outcome of Foggie's Delaware County criminal case. During the course of this hearing, Foggie admitted to having been convicted in that matter, but asked the Board for leniency and to allow him to start serving his April 2019 federal sentence prior to serving any state-level backtime. *Id.* at 113, 115-18.[7]

The Board then issued its second parole revocation decision on May 22, 2020. Therein, it referred to its first parole revocation decision of December 12, 2019, and ordered Foggie to serve 60 months of CPV backtime concurrently with the previously imposed 24 months of CPV backtime. The Board also denied credit for time served at liberty on parole and recalculated the maximum date on his original August 2013 sentence as October 12, 2029. *Id.* at 135-36. Foggie administratively challenged this decision on June 1, 2020, arguing that the Board had used the wrong date for his return to state custody after his federal conviction and, therefore, had neither given him the correct amount of time credit nor properly calculated the date upon which he would finish serving his CPV backtime. *Id.* at 139-42.

The Board responded to both of Foggie's administrative appeals via an order issued on April 29, 2021. Through this order, the Board affirmed its December 12, 2019 decision with regard to the timeliness of Foggie's November 25, 2019 parole revocation hearing. *Id.* at 162-63. In addition, the Board partially reversed its May

---

[7] The Board did not address this request in its May 22, 2020 decision, but this is of no moment, as the Board was without legal authority to grant such relief. Per Section 6138(a)(5.1) of the Prisons and Parole Code, a parolee has to serve "the balance of the original term" before they can start serving a sentence imposed by another jurisdiction. 61 Pa. C.S. § 6138(a)(5.1). In other words, a parolee has to serve any backtime imposed by the Board before they can start serving a new federal sentence.

6

22, 2020 decision by giving Foggie an additional nine days of time credit towards his original August 2013 sentence and recalculating the maximum date on that sentence. *Id.* at 163. Foggie then appealed the Board's order to our Court shortly thereafter.

## II. Discussion

Foggie presents two arguments for our consideration on appeal, both of which stem from his position that his first parole revocation hearing was not held within the legally mandated time window. First, he claims that the Board erred because it did not convene this hearing within 120 days of the official verification of his return to an SCI. Foggie's Br. at 24-27. Second, he maintains that the Board's determination that the hearing was timely, which was rooted in its conclusion that it had made a good faith effort to obtain official verification of his federal conviction and had held the hearing within 120 days of securing that verification, was not supported by substantial evidence. *Id.* at 27-30.[8]

"There is no question that one of the minimal due process rights to which parolees are entitled is the disposition of their parole violation charges within a reasonable time. . . . By administrative regulation, the Board has determined 120 days to constitute a reasonable time in which it must dispose of parole violation charges." *Carr v. Pa. Bd. of Prob. & Parole*, 494 A.2d 1174, 1176-77 (Pa. Cmwlth. 1985) (internal citation omitted). Specifically, the Board has articulated that "[a parole] revocation hearing shall be held within 120 days from the date [it] receive[s]

---

[8] "Our scope of review over actions of the Board is limited to determining whether [its] decision was supported by substantial evidence, whether an error of law occurred[,] or whether constitutional rights were violated." *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109 n.1 (Pa. Cmwlth. 2008); 2 Pa. C.S. § 704. Evidence is substantial in nature where a reasonable person could accept that it supports a given finding or conclusion. *Heckman v. Pa. Bd. of Prob. & Parole*, 744 A.2d 371, 372 (Pa. Cmwlth. 2000).

official verification of the [accused violator's] plea of guilty or *nolo contendere* or of the guilty verdict at the highest trial court level[.]" 37 Pa. Code § 71.4(1). In certain instances, however, this deadline is determined in a slightly different manner. First,

> [i]f a parolee is confined outside the jurisdiction of the [DOC], such as confinement out-of-[s]tate, confinement in a [f]ederal correctional institution[,] or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Com*[.] *ex rel. Rambeau v. Rundle*, . . . 314 A.2d 842 ([Pa.] 1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a [s]tate correctional facility.

*Id.* § 71.4(1)(i). Second, "[a] parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the [DOC] as of the date of the waiver." *Id.* § 71.4(1)(ii). In the event a parolee challenges the timeliness of their parole hearing, the burden falls upon the Board to prove by a preponderance of the evidence that the hearing was, in fact, held within the mandated 120-day time window. *Montgomery v. Pa. Bd. of Prob. & Parole*, 808 A.2d 999, 1001 (Pa. Cmwlth. 2002). Additionally, the Board has a "duty . . . to exercise good faith in connection with receipt of official verification of conviction[.]" *Taylor v. Pa. Bd. of Prob. & Parole*, 624 A.2d 225, 228 n.3 (Pa. Cmwlth. 1993). It follows, then, that "[u]nreasonable and unjustifiable delays which are not attributable to [a] parolee or [their] counsel do not toll the running of the 120 days." *Williams v. Pa. Bd. of Prob. & Parole*, 579 A.2d 1369, 1372 (Pa. Cmwlth. 1990). "Where the Board fails to present evidence sufficient to meet its burden of proving timeliness, the appropriate remedy is a dismissal of the violation charges

8

with prejudice." *Fitzhugh v. Pa. Bd. of Prob. & Parole*, 623 A.2d 376, 380 (Pa. Cmwlth. 1993).

With regard to Foggie's first argument, we disagree with his contention that, under the circumstances, the Board was required to convene his first parole revocation hearing within 120 days of officially verifying that he had returned to an SCI. As we explained in *Morgan v. Pennsylvania Board of Probation and Parole*,

> [w]hen a prisoner is detained pursuant to a writ for the purposes of presenting him to the court on new criminal charges, the prisoner is
>
>> "considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. The receiving sovereign . . . is, therefore, considered simply to be 'borrowing' the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him."

814 A.2d 300, 303 (Pa. Cmwlth. 2003) (quoting *Ruggiano v. Reish*, 307 F.3d 121, 125 n.1 (3d Cir. 2002)). In this instance, the record reflects that the Board transferred Foggie via writ to federal authorities on April 12, 2018, after which he was held pending trial before the District Court. *See* S.C.R. at 1a. He eventually pled guilty on August 21, 2018, to the federal charges that had been lodged against him and was sentenced by the District Court on April 19, 2019. Shortly thereafter, on April 30, 2019, Foggie was returned to SCI-Phoenix. *See id.*; C.R. at 27, 44-50, 156-57. This, coupled with the absence of proof that the Board ever relinquished primary custody of Foggie to the federal government, leads us to conclude that although he was physically held in a federal facility between April 12, 2018, and April 30, 2019, on the aforementioned writ, he nevertheless remained within the Department of Corrections' jurisdiction during that time window. *See Morgan*, 814 A.2d at 303. Therefore, since Foggie was never confined outside of the Department of

9

Corrections' jurisdiction and, instead, was merely "borrowed" by federal authorities for purposes of trial, plea, and sentencing, the Board did not have to hold a parole revocation hearing regarding his federal conviction within 120 days of officially verifying his return to an SCI. *See id.*; 37 Pa. Code § 71.4(1)(i). Rather, the Board was simply required to hold that hearing no later than 120 days after obtaining official verification of that federal conviction. *See* 37 Pa. Code § 71.4(1).

Nevertheless, we are persuaded by his claim that the Board did not convene the November 25, 2019 revocation hearing within this legally mandated time period. We find that the Board's conclusion that it held a timely revocation hearing is not supported by substantial evidence. As already noted, Mr. Healey was the Board's sole witness regarding the issue of timeliness. Mr. Healey's testimony, however, was not of a character that a reasonable person would accept as supportive of the Board's conclusions regarding good faith and the timing of the November 25, 2019 parole revocation hearing. While his testimony revealed that a Board agent had checked the PaCIC database for the official conviction verification, it failed to offer any insight into when or how often this had occurred. In addition, Mr. Healey did not speak as to why, as the days ticked past and the official verification of Foggie's federal conviction was nowhere to be seen on the PaCIC database, Board agents did not try alternate methods to secure that information. Mr. Healey offered no explanation as to why it took until August 27, 2019, or 119 days after Foggie's return to SCI-Phoenix, for a Board agent to actively seek the official conviction verification by requesting it from a federal prosecutor. Furthermore, Mr. Healey was clearly unfamiliar with the particulars of Foggie's situation, as he provided incorrect information about both the date upon which the federal government transferred Foggie back to an SCI and the actual facility to which Foggie had been returned. In

10

sum, Mr. Healey's testimony does not support the Board's conclusions regarding timeliness and, instead, only establishes that the Board did not make good faith efforts to secure the necessary official verification prior to August 27, 2019. Therefore, the 119 days that elapsed between Foggie's return to SCI-Phoenix on April 30, 2019, and August 27, 2019, when the Board finally obtained official verification of his federal conviction, constituted an unreasonable and unjustifiable delay that failed to toll the 120-day deadline for holding Foggie's first revocation hearing, which, factoring in those 119 days, should have been held no later than August 28, 2019. *See Taylor*, 624 A.2d at 228; *Williams*, 579 A.2d at 1372 n.3. The November 25, 2019 revocation hearing was thus untimely[9] and, as such, the Board erred by both concluding otherwise and failing to dismiss the underlying parole violation charges. *Fitzhugh*, 623 A.2d at 380.

### III. Conclusion

In light of the foregoing, we reverse the Board's April 29, 2021 order to the extent it affirmed the Board's December 12, 2019 decision, which stemmed from the November 25, 2019 revocation hearing regarding Foggie's federal conviction. In addition, given that the Board's May 22, 2020 decision, which resulted from the January 22, 2020 revocation hearing regarding his Delaware County conviction, was predicated in part upon its December 12, 2019 decision, we vacate the Board's April

---

[9] As mentioned *supra*, the first revocation hearing was initially scheduled for September 30, 2019, but was rescheduled several times and ultimately took place on November 25, 2019. *See* C.R. at 52-54, 57. It is not entirely clear on the face of the record whether these continuances were requested by Foggie or the Board, and the Board did not make any factual findings regarding that question. This open question ultimately does not affect the outcome here, however, as the hearing would not have been timely even if it had taken place on the originally scheduled date of September 30, 2019. As the Board obtained official verification of Foggie's federal conviction on August 27, 2019, 34 days passed between receipt and the original revocation hearing date. Thus, even if that hearing had happened as originally scheduled, it would have taken place 153 days, *i.e.*, 119 days plus 34 days, after the clock on the hearing's timeliness had begun to run.

11

29, 2021 order, to the extent it affirmed the May 22, 2020 decision. Finally, we remand this matter to the Board, with instructions that it dismiss the parole violation charges that gave rise to its December 12, 2019 decision and, taking this dismissal into account, issue a new decision regarding the parole violation charges that led to its May 22, 2020 decision.

_____

ELLEN CEISLER, Judge

Judge Wallace dissents and wishes to be so noted.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Foggie,        :
           Petitioner     :
                        :

v.                 :    No. 608 C.D. 2021
                        :

Pennsylvania Parole Board,    :
           Respondent    :

## O R D E R

AND NOW, this 29th day of April, 2022, it is hereby ORDERED that:

1. Respondent Pennsylvania Parole Board's (Board) April 29, 2021 order is REVERSED IN PART, to the extent that the April 29, 2021 order affirmed the Board's December 12, 2019 decision, which was based upon Petitioner Jonathan Foggie's (Foggie) guilty plea in the United States District Court for the Eastern District of Pennsylvania;

2. The Board's April 29, 2021 order is VACATED IN PART, to the extent that the April 29, 2021 order affirmed the Board's May 22, 2020 decision, which was based upon Foggie's guilty plea in the Court of Common Pleas of Delaware County;

3. This matter is REMANDED to the Board, with instructions that it dismiss the parole violation charges that gave rise to its December 12, 2019 decision and, taking this dismissal into account, issue a new decision regarding the parole violation charges that led to its May 22, 2020 decision.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge